## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

**TAJIIA RAMONE HARDY,**

     **Plaintiff,**

**vs.**                                                          **CIVIL ACTION NO. 5:17-CV-02346**

**CHRISTY SMITH CAR INSURANCE,**
***ET AL.,***

     **Defendants.**

### PROPOSED FINDINGS AND RECOMMENDATION

Pending is Plaintiff's Application to Proceed *in Forma Pauperis*, filed on April 14, 2017. (Document. No. 1.) By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 3.) Having examined the Complaint as amended, the undersigned concludes that this case must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii) which provides that the Court shall dismiss the case of a person proceeding *in forma pauperis* at any time if the Court determines that the action fails to state a claim for which relief can be granted.[1]

### FACTUAL BACKGROUND

In his Complaint filed on April 14, 2017 (Document No. 2.), Plaintiff indicates that the basis for jurisdiction concerns a federal question, including "medical malpractice, negligence (med express, ER, ambulance), negligence (DHHR), discrimination (Sheriff's), product liability (Dodge)". (Id. at 5.) Plaintiff lists numerous defendants, including: Raleigh General Hospital;

---

[1] Because Plaintiff is acting *pro se*, the documents he has filed in this case are held to a less stringent standard than had they been prepared by a lawyer, therefore, they are construed liberally. See Haines v. Kerner, 404 U.S. 519, 520-521 (1972).

Sheriff of Raleigh County; Jan-Care Ambulance Service; Dodge Manufacture[r] "and every seller in the distribution chain"; Med-Express; Raleigh County DHHR Office; Christy Smith's Insurance; and individuals, Lt. T.L. Miles, Raleigh County Sheriff Department; Cpl. R. Talley, Raleigh County Sheriff Department; John Smith, "Car Owners"; Christy Smith, "Car Owners"; Mohamad Kalov, M.D., Med-Express; Jessica Sharp, FNP, RGH (ER); Kristina Killen, CFNP, Med-Express; J. Mingo Winters, fired attorney; and Jose S. Romero, RGH (ER). (Id. at 2-4.) On May 11, 2017, Plaintiff filed an amendment to his Complaint (Document No. 4.), entitled "facts & definitions", providing general definitions of various terms and appears to add additional defendants, including "SSI, disability, the City of Beckley and State of West Virginia" and individual defendants "SS office Beckley – Mrs. Moore" and "Mr. Moss – top supervisor Charleston". (Id. at 6, 14.)

He further explains his claims consisting of: (1) "Insurance" for his "broke back" and for the air bags not deploy[ing] and "them not doing there [sic] job"; (2) Dodge, because "air bags not deploy, recall on year and make"; (3) Sheriff's, for "discrimination, restraining me on the side walk, then trying to take me to jail, put me in the car without reading my rights"; (4) ambulance, for "not taken [sic] me to the hospital and following protocol"; (5) DHHR, for "trying to stall making me wait an extra 2 months for my med-card and stamps"; (6) "medical malpractice [negligence]"; and (7) the ER, for "[medical malpractice negligence], no test, no neck brace, back broke, or surgery." (Id. at 16.)

The factual allegations surrounding the Complaint concerns a "wreck" that occurred in Raleigh County on February 3, 2016 at 1:00 a.m. when "we hit a telephone pole". (Document No. 2 at 8.) The air bags failed to deploy upon impact, and Plaintiff and his companions proceeded to wave down individuals for help pull "us out". (Id.) Plaintiff states the police, a fireman, and an

2

ambulance were on the scene, and "[t]he lady cop detained" Plaintiff while he "sitting on the ground cuffed" and asked him if drugs were in the car, which Plaintiff denied. (Id.) Plaintiff asserts that the "lady cop" was rude and racist (Id.); a search of the vehicle led to the discovery of drugs in "her purse". (Id. at 9.) Plaintiff advised that he had only met "this woman twice" and "I don't check people's trunk or car before I get in it." (Id.) Plaintiff was placed in the "cop car" where a "drug specialist" asked Plaintiff some questions, removed the handcuffs, and eventually drove Plaintiff home because Plaintiff's father refused to pick him up. (Id. at 9-10.) Plaintiff appears to allege that the "lady cop" and "drug specialist" asked Plaintiff about the people who came to help him and his companions "because they were black" and "that they were around the corner waiting on me" and that they "were with us and threw out heroin." (Id.)

Plaintiff states that the "ambulance lady" did not check on him, and only advised him to go to the hospital. (Id. at 9.) The next morning, Plaintiff states he went to the ER and "the lady Dr. [b]arely touched me" and told Plaintiff he had sore muscles and gave him three days off work without any further treatment. (Id. at 10.) Plaintiff attempted to work after three days and worked three hours, but had to obtain another work excuse because he could not work. (Id.) Plaintiff went to Med-Express and a nurse and doctor took x-rays and advised him that his back was "broke", though Plaintiff "figured out by myself my back was broke." (Id. at 11.) Plaintiff states that he "tried to walk it of[f]" but it hurt and he became dizzy and his ears started ringing. (Id. at 12.) He went to the ER where he was given a shot of morphine and an MRI was taken "and said it was nothing." (Id.)

Plaintiff next appears to allege problems obtaining his medical card from the DHHR and getting papers filled out from his job regarding his being off work due to the motor vehicle

accident. (Id. at 11-12.) Plaintiff asserts this medical card and paperwork issue involved a "3 month wait for a 30 day process". (Id. at 12.)

Plaintiff asserts he followed up with the doctor at Med-Express, who stated his spine was bulging; Plaintiff was referred for therapy, which did not work, and injections and surgery were the "next step." (Id. at 13.) Plaintiff was unable to continue care at Med-Express due to an unpaid bill from February, and thought it was "weird" that the Med-Express doctor did not have his MRI or medical records and "weird" that RGH transferred him to Access Health and a Charleston based surgeon for his back. (Id.) Although his therapist "was Access Health", Plaintiff thought it was "weird" that Access Health said "they were not taking car wreck patients nor back patients." (Id.)

Plaintiff states he contacted the Charleston surgeon and was advised that he was not transferred and that his medical records would be needed and an evaluation. (Id. at 14.) Plaintiff inquired of the ER why he had not been transferred and "she said she would figure out and give me a call back." (Id.) Plaintiff complains of the delay in getting back treatment. (Id.) Plaintiff also asserts that he had been getting calls from his job where he had not worked in six months and speculates "they know I should be getting disability and they know its coming out there [*sic*] pocket." (Id.)

In his 'amended' Complaint, Plaintiff alleges he filed for SSI and disability and it took seven months to deny him. (Document No. 4 at 6.) With regard to the SSI offices in Beckley and Charleston, Plaintiff alleges:

> 9:00-9:30 May 8th Monday on phone with Mr. Moss lying about protocol and dening [*sic*] to have denied me April 20th Beckley office said the[y] denied me and was suppose [*sic*] to send me my second ap[p]eal when I got my mail [*sic*] got a letter from Charleston cause [*sic*] I did tell them what I knew and would add them to my conspiracy list.[2]

---

[2] Plaintiff also alleges that his mother sued RGH in 1990 and won, and asserts "another reason I feel like I'm being conspired against." (Document No. 4 at 7.)

(Id. at 14.) Plaintiff seeks damages totaling $250,000,000. (Id.)

## THE STANDARD

Because Plaintiff has applied to proceed without prepayment of the Court's filing fees and costs, his Complaint and 'amended' Complaint are subject to pre-service screening pursuant to 28 U.S.C. § 1915. See Randolph v. Baltimore City States Atty., 2014 WL 5293708, at *2 (D. Md. Oct. 14, 2014), aff'd, Randolph v. New Technology, 588 Fed.Appx. 219 (4th Cir. 2014). On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327-328. A complaint, therefore, fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Deference is given to pro se Complaints. See Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978) (A District Court should allow pro se plaintiffs reasonable opportunity to develop pleadings.); Coleman v. Peyton, 370 F.2d 603, 604 (4th Cir. 1965) (Pro se plaintiff should be given an opportunity to particularize potentially viable claims.). A pro se Complaint may therefore be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Haines v. Kerner, 404 U.S. 519, 521 (1972), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Where a pro se

Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint, but must permit the amendment. <u>Denton v. Hernandez</u>, 504 U.S. 25, 34 (1992).

## ANALYSIS

As an initial matter, there is no indication that Plaintiff attempted to comply with the mandatory pre-filing requirements of the Medical Professional Liability Act ("MPLA"), W. Va. Code § 55-7B-1 *et seq.* with regard to his claims of "medical malpractice [negligence]" against Raleigh General Hospital/ER, Med-Express, Jan-Care Ambulance Service, Dr. Mohamad Kalou, Jessica Sharp, Kristina Kellen, or Jose S. Romero. In short, there is no proof that Plaintiff served these aforementioned parties by certified mail, return receipt requested with a Notice of Claim or a Certificate of Merit thirty days before he filed his lawsuit in this Court. Plaintiff's failure to abide by the MPLA's mandatory provisions deprives this Court of jurisdiction of this subject matter, accordingly, those claims should be dismissed. See <u>Miller v. Stone</u>, 607 S.E.2d 485 (W. Va. 2004).

Moreover, in submitting his Complaint, Plaintiff is required to comply with the general rules of pleading as set forth in Rule 8(a) of the Federal Rules of Civil Procedure. That Rule provides as follows:

(a) Claim for Relief. A pleading that states a claim for relief must contain:

(1) a short and plain statement of the grounds for the Court's jurisdiction, unless the court already has jurisdiction and the claim needs no jurisdictional support;
(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Plaintiff's Complaint, and its amendment, are not in compliance with Rule 8(a) for failing to allege sufficient facts and circumstances showing that he is entitled to relief. Liberally construing Plaintiff's Complaint and its amendment, the undersigned believes he is suing his car owner companions, and ostensibly, the insurance carrier for the vehicle, for damages he incurred as a

result of the wreck, however, Plaintiff only provides "naked assertion[s]" which are verboten pursuant to the jurisprudence espoused under Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Although a complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (citations omitted). To survive dismissal for failure to state a claim, the complaint must raise a right to relief that is more than speculative. Id. In other words, the complaint must contain allegations that are "plausible" on their face, rather than merely "conceivable." Id. at 555, 570. A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). In other words, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Conley, 355 U.S. at 45–46 (1957).

Though Plaintiff alleges a "broke back" from the collision with the telephone pole, he has alleged no facts that support a claim against the car owners or "Christy Smith Car Insurance", only conclusions that are specious at best, given that he worked for a short period after his back was allegedly broken. Further, although not specifically plead, the undersigned can only assume that the vehicle Plaintiff and his companions were traveling in was a Dodge, though he provides no make, model or year number, and makes no claims as to its ownership, but offers only a conclusory statement that the air bags failed to deploy, and that there was an alleged recall. Again, there is nothing in Plaintiff's assertions with regard to his personal injury-type claims that rise to an

appreciable claim for which relief can be granted. In short, the claims against Christy Smith Car Insurance, John Smith, Christy Smith, and Dodge must be dismissed.

The undersigned is at a loss as to what precisely are Plaintiff's claims against the Department of Health and Human Resources office in Beckley, only that Plaintiff alleges to having to wait longer for a "medical card and stamps" due to some kind of "negligence" that is not explained. (Document No. 2 at 5, 8, 12.) There are no set of facts alleged here that support any claim for which Plaintiff would be entitled to relief; accordingly, this 'claim' against this defendant should be dismissed.

With regard to Mrs. Moore, Mr. Moss, the SSI and Disability offices in Beckley and presumably Charleston, Plaintiff only alleges some kind of "conspiracy" in the appeals process in his applications for SSI and disability. Again, Plaintiff fails to abide by Rule 8(a) insofar as his short and plain statement fails to indicate any kind of claim or that he is entitled to relief. Instead, Plaintiff simply avers to a "#conspiracy" and that the "price as of April 18th" rose to $250,000,000; he adds the City of Beckley and State of West Virginia to this claim. (Document No. 4 at 6.) Plaintiff alleges no facts that support these claims against the City or the State, however, those entities appear to be simply lumped in with Mrs. Moore, Mr. Moss and the aforementioned Social Security offices. Based on Plaintiff's own allegations that he has applications on appeal for SSI and Disability Insurance Benefits, which are presumably still pending before the Commissioner of Social Security, this Court does not have jurisdiction to entertain Plaintiff's claims in those matters until there is a final decision. See 42 U.S.C. § 405(g). Plaintiff's allegations are too vague to decipher the status of his claims, or even to ascertain what "conspiracy" arose among these defendants, therefore, the claims against Mrs. Moore, Mr. Moss, the respective Social Security

offices in Beckley and presumably Charleston, the City of Beckley and the State of West Virginia should be dismissed.

With respect to Plaintiff's claims of discrimination and being restrained without having been read his "rights"[3] (Document No. 2 at 16.) against the Raleigh County Sheriff's Department and, ostensibly the individual deputies named herein, the undersigned presumes that Plaintiff attempts to allege a discrimination claim under 42 U.S.C. § 1983, though he does not explicitly invoke a violation under this statute. Plaintiff's Complaint provides little insofar as how his "rights" were violated, and only provides a legal conclusion that he was discriminated against, but he seems to indicate that he was not charged, and was driven home after his father refused to pick him up. Though the undersigned can appreciate that Plaintiff would not know if one of his riding companions had illicit drugs in her purse because he had only met her twice, law enforcement had a legitimate state interest in investigating the presence of drugs at the scene of a single vehicle accident.

The undersigned finds that though Plaintiff is unclear that a state criminal or judicial proceeding ensued following the early morning car wreck, this Court should nevertheless abstain from exercising subject matter jurisdiction over Plaintiff's claims based upon the Younger-abstention doctrine. See Younger v. Harris, 401 U.S. 37 (1971). "Under the Younger-abstention doctrine, interest of comity and federalism counsel federal courts to abstain from jurisdiction whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests." Hawaii Housing Auth. v. Midkiff, 467 U.S. 229, 237-238 (1984). The Fourth Circuit has recognized that "Younger abstention is appropriate only in those cases in which (1) there is an ongoing state judicial proceeding, (2) the proceeding implicates

---

[3] Pursuant to Miranda v. Arizona, 384 U.S. 436 (1966).

important state interest, and (3) there is an adequate opportunity to present the federal claims in the state proceeding." Employers Resource Management Co., Inc. v. Shannon, 65 F.3d 1126, 1134 (4th Cir. 1995), *cert. denied*, 516 U.S. 1094, (1996). A court should disregard Younger's mandate only where "(1) there is a showing of bad faith or harassment by state officials responsible for the prosecution; (2) the state law to be applied in the criminal proceeding is flagrantly and patently violative of express constitutional prohibitions; or (3) other extraordinary circumstances exist that present a threat of immediate and irreparable injury." Nivens v. Gilchrist, 44 F.3d 237, 241 (4th Cir. 2006) (internal quotations omitted). To prevail under the bath faith exception, Plaintiff must show "a prosecution has been brought without a reasonable expectation of obtaining a valid conviction." Suggs v. Brannon, 804 F.2d 274, 278 (4th Cir. 1986). "[I]t is the plaintiff's 'heavy burden' to overcome the bar of Younger abstention by setting forth more than mere allegations of bad faith or harassment." Phelps v. Hamilton, 122 F.3d 885, 890 (10th Cir. 1997).

The undersigned finds that the Younger abstention doctrine may apply in the instant case, however, it is clear that Plaintiff provides no grounds that support any of the enumerated Nivens exceptions to the Younger mandate. Plaintiff has shown no improper prosecution against him in State court, or any facts supporting a claim for unreasonable harassment that comports with the bad faith exception. In sum, Plaintiff's claims against the Raleigh County Sheriff's Department and the individual deputies should be dismissed.

Finally, with respect to J. Mingo Winters, "fired attorney", Plaintiff has alleged no facts whatsoever in support of any claims against this individual and clearly fails to comport with Rule 8(a) requirements. Accordingly, this individual defendant should be dismissed from this action.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** Plaintiff's Application to Proceed *in Forma Pauperis* (Document No. 1.), **DISMISS** Plaintiff's Complaint and its amendment (Document Nos. 2 and 4.) and remove this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Berger, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to the *pro se* Plaintiff.

ENTER: May 15, 2017.

Omar J. Aboulhosn
United States Magistrate Judge