# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

TAJIIA RAMONE HARDY,

           Plaintiff,

v.                                                                            CIVIL ACTION NO. 5:17-cv-02346

CHRISTY SMITH CAR INSURANCE, et al.,

           Defendants.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed the Plaintiff's *pro-se Complaint* (Document 2), wherein the Plaintiff alleges that officers of the Raleigh County Sheriff's Department discriminated against him and that employees of Raleigh General Hospital, Jan Care Ambulance Service, MedExpress, and the Raleigh County Department of Health and Human Resources committed medical malpractice and negligence in dealing with him after a car accident. His complaint also alleges products liability against Dodge, the manufacturers of the automobile, and includes a complaint against the insurer of the automobile's owner. By *Standing Order* (Document 3), this action was referred to the Honorable Omar Aboulhosn, United States Magistrate Judge, for submission to this Court of proposed findings of fact and recommendation for disposition, pursuant to 28 U.S.C. § 636. On May 15, 2017, Judge Aboulhosn submitted his *Proposed Findings and Recommendation* (PF&R) (Document 5), wherein it is recommended that this Court deny the Plaintiff's *Application to Proceed in Forma Pauperis* (Document 1), dismiss the Plaintiff's complaint, and remove this

matter from the Court's docket.  The Plaintiff filed his objections to the PF&R[1] (Document 6) on May 18, 2017.  For the reasons stated herein, the Court finds that the Plaintiff's objections should be overruled and the Magistrate Judge's PF&R adopted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Magistrate Judge Aboulhosn's PF&R sets forth in great detail the procedural and factual history surrounding the Plaintiff's claims.  The Court now incorporates by reference those facts and procedural history.  To provide context for the ruling herein, the Court provides the following summary.

The Plaintiff, Tajiia Hardy, brought this action against the following Defendants: Raleigh General Hospital (RGH), the Raleigh County Sheriff's Department, Jan-Care Ambulance Service, MedExpress, Raleigh County Department of Health and Human Resources (DHHR), Lt. T.L. Miles and Cpl. R. Talley of the Raleigh County Sheriff's Department, John and Christy Smith as owners of the automobile he was in when the accident occurred, Dr. Mohamad Kalov, M.D., Jessica Sharp, Kristina Killen, J. Mingo Winters (whom the Plaintiff refers to as "fired attorney"), Jose S. Romero of RGH, the unnamed insurers who provided John and Christy Smith with car insurance, and Dodge automobile manufacturers along with "every seller [of Dodge automobiles] in the distribution chain."  (Compl. at 2-4.)

According to his complaint, the Plaintiff was involved in an automobile accident on February 3, 2016.  (*Id.* at 8.)  Mr. Hardy was a passenger seated in the back of the automobile owned by John and Christy Smith when the automobile struck a telephone pole.  The Plaintiff

---

1 The Court notes that the Plaintiff's objections are not labeled as such and have no title, but state what the Court construes to be objections to Magistrate Judge Aboulhosn's PF&R.

explains that the airbags in the vehicle did not deploy, and the Plaintiff was able to exit the vehicle and wave for help to pull the automobile back from the pole. (*Id.*) The Plaintiff alleges that when the police and ambulance arrived on the scene, he was "detained" on the ground while police officers searched the car. Upon searching the trunk of the automobile, police officers found drugs in the purse of Ms. Smith. Mr. Hardy did not know the drugs were in her possession. After being examined[2] by an EMT, Mr. Hardy was told he could go home and that he could go to the hospital the following morning if he was still experiencing pain. Shortly thereafter, a law enforcement officer whom Mr. Hardy refers to as a "drug specialist" took him home. (*Id.* at 10.)

The next morning, Mr. Hardy went to the emergency room at Raleigh General Hospital. The doctor who performed the examination informed him he had sore muscles from the accident and gave him an excuse for three days off work to rest and recover. According to Mr. Hardy, no blood work was done and no x-rays or MRIs were taken. He returned to work after three days, but because his soreness and pain persisted, he went to MedExpress. At MedExpress, he was examined and informed by a nurse that his spine was crooked. He alleges that the nurse "…basically right then told me it was broke." (*Id.*) He further alleges that while listening to a conversation between the nurse and the doctor at MedExpress, he overheard them talking about the Plaintiff's broken back and deciding whether or not to tell him about it. (*Id.* at 11.) Based on that conversation, Mr. Hardy alleges that the staff at MedExpress knew his back was broken at the time, but were hiding it from him.

Given what he alleges was a broken back, Mr. Hardy began interactions with the DHHR regarding his "DHHR papers" that he received in the mail. (*Id.*) Because his employer would

---

2 Mr. Hardy takes issue with the examination he received on site by the EMT, and the examination he received the following day at the emergency room.

not sign off on the DHHR paperwork, Mr. Hardy eventually quit his job and began the process of "get[ting] [his] medical card and stamps." (*Id.*) He alleges that these issues involved a "3 month wait for a 30 day process." (*Id.* at 12). During this process, he asserts that several doctors between RGH, MedExpress, and Access Health in Charleston, West Virginia, improperly handled his complaints and failed to transfer his records appropriately. He also contends in his Amended Complaint (Document 4) that he began the process of filing for Social Security and disability benefits, and that it took seven months before he received an answer. Based on all of these allegations, Mr. Hardy complains that the police officers involved in the traffic stop discriminated against him, that all of the medical professionals committed negligence and malpractice, and that the DHHR and Social Security Administration acted in a manner that caused him great injury. He seeks $250,000,000 in damages from the listed Defendants.

## STANDARD OF REVIEW

This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). When reviewing portions of the PF&R de novo, the Court will consider the fact that Petitioner is acting *pro se*, and

his pleadings will be accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978).

**DISCUSSION**

Upon review of the Plaintiff's complaint and his petition to proceed *in forma pauperis*, the Magistrate Judge recommended dismissing the complaint based on it being frivolous.. Judge Aboulhosn first found that the Plaintiff failed to comply with the Medical Professional Liability Act (MPLA), which requires him to serve the medical malpractice Defendants, by certified mail, with a Notice of Claim and a Screening Certificate of Merit thirty (30) days before he filed this lawsuit. Because he failed to comply with these requirements, Judge Aboulhosn recommended dismissing the Plaintiff's medical malpractice/negligence claims. The Magistrate Judge further found that the Plaintiff's complaint as a whole fails to comply with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure. He reasoned that, even construing the Plaintiff's complaint liberally, the Plaintiff stated no set of facts for which relief could be granted. Specifically regarding Mr. and Mrs. Smith, the insurers of their automobile, and Dodge, the Magistrate Judge found that Mr. Hardy set forth no set of facts that would support liability of any of these defendants for his alleged injuries. Judge Aboulhosn found that Mr. Hardy failed to state that the automobile he was riding in during the accident was even manufactured by Dodge, much less that Dodge had anything to do with the accident or the Plaintiff's injuries. Thus, Judge Aboulhosn recommended dismissal of the Plaintiff's claims against these defendants.

Regarding the Plaintiff's claims against DHHR and the Social Security and Disability offices, the Magistrate Judge again noted that the Plaintiff set forth no set of facts that support any claim, and further found that the Plaintiff's complaint fails to precisely state the nature of his claims

5

against the DHHR. Because the Plaintiff merely claims that all of these Defendants are part of some large conspiracy against him, without any facts to support such claims, Judge Aboulhosn also recommended dismissal of these claims.

With respect to the Plaintiff's discrimination claims against the various law enforcement officers who responded to the car accident, Judge Aboulhosn assumed from the sparse facts stated in the complaint that the Plaintiff was attempting to bring a discrimination claim under 42 U.S.C. § 1983, although this statute is never specifically invoked. He found, based on the facts alleged, law enforcement officers had a legitimate interest in investigating the scene of a car accident for narcotics. He further found that, by the Plaintiff's own allegations, law enforcement officers drove the Plaintiff home after their investigation and never charged him with any crime. However, Judge Aboulhosn reasoned that this Court should apply the *Younger* abstention doctrine[3] and refrain from exercising jurisdiction over the Plaintiff's discrimination claims because it is unclear whether any state criminal or judicial proceeding followed the alleged car accident.

Finally, regarding the Plaintiff's claims against J. Mingo Winters, whom the Plaintiff refers to as his "fired attorney," the Magistrate Judge found that the Plaintiff failed to allege any facts at all regarding any claims he might have against Mr. Winters, and that the claims against Mr. Winters should, therefore, be dismissed as not complying with Rule 8 of the Federal Rules of Civil Procedure.

The Plaintiff objects to the recommendation that his claims be dismissed. He argues that he was "harassed" by law enforcement officers in the aftermath of the car accident because "[the

---

3 *Younger* abstention, which derives its name from the United States Supreme Court case of *Younger v. Harris*, 401 U.S. 37 (1971), is a federal court abstention doctrine in which the "interest of comity and federalism counsel federal courts to abstain from jurisdiction whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests." *Hawaii Housing Auth. V. Midkiff*, 467 U.S. 229, 237-38 (1984).

officer] kept implying that I was lying talking about taking me to jail and making me walk 3 hours home after I asked her to drive me home with a broken back." (Document 6 at 1.) He further argues that the same officer discriminated against him by "saying I know the black people [who were earlier at the scene of the accident] when I don't even know them," and that this creates an extraordinary circumstance that presents a threat of immediate and irreparable injury under *Nivens v. Gilchrist*, 44 F.3d 237, 241 (4th Cir. 2006). The Plaintiff also objects on the grounds that the "time limits" that the cops, doctors, and lawyers have allegedly imposed on him were purposefully imposed to "prolong his process." Lastly, he objects to Judge Berger presiding over the action because the Court[4] "never took a look into anything nor asked for [the Plaintiff's] records."

When a plaintiff brings an action *pro se*, a district court must dismiss the case if it is determined that the case is frivolous. 28 U.S.C. § 1915(e)(2)(B). Courts often perform this screening process to determine whether a case is frivolous while reviewing the plaintiff's motion to proceed *in forma pauperis*. *See*, *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). A *pro se* complaint is frivolous "where it lacks an arguable basis either in law or in fact." *Id.* at 325. "[28 U.S.C. § 1915] accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Id.* at 327. Examples of complaints whose factual contentions are "clearly baseless" include "claims describing fantastic or delusional scenarios." *Id.* at 328. Further, the plausibility standard articulated by the Supreme Court in *Bell Atlantic Corp. v. Twombly* also applies to a *pro se* plaintiff's complaint and requires factual allegations such that it states a claim for relief that is

---

4 Mr. Hardy refers to the Court as "Mr. Burger" throughout his objections.

plausible on its face and "demonstrate[s] more than a sheer possibility that a defendant has acted unlawfully." *Randolph v. Baltimore City States Atty.*, No. CIV.A. WDQ-14-3176, 2014 WL 5293708, at *2 (D. Md. Oct. 14, 2014), *aff'd sub nom. Randolph v. New Tech.*, 588 F. App'x 219 (4th Cir. 2014).

Courts are required, however, to hold a *pro se* plaintiff's complaint to a "less stringent standard[] than formal pleadings drafted by lawyers." *Id.* Nevertheless, "[a] court . . . may dismiss a claim as frivolous if 'the facts alleged are clearly baseless.'" *Id.* (quoting *Denton v. Hernandez*, 504 U.S. 25, 32 (1992)).

Even under the most liberal construction, the Court finds the Plaintiff has failed to set forth a claim that is plausible on its face and which demonstrates more than a sheer possibility that any of the named Defendants acted in an unlawful manner. With respect to the Plaintiff's claims for medical malpractice and negligence against a litany of medical professionals, the Plaintiff has provided no indication that he even attempted to comply with the mandatory pre-filing requirements of the Medical Professional Liability Act (MPLA), W.Va. Code § 55-7B-1 *et seq*. Because the Plaintiff's claims of malpractice and negligence sound in tort, the substantive law of West Virginia, and therefore the MPLA, applies. The MPLA requires claimants to serve any health care providers they intend to sue with a notice of claim setting forth the theory of liability, and a screening certificate of merit completed by an expert. W.Va. Code § 55-7B-6(b). Because the Plaintiff has made no effort to abide by these mandatory provisions and nothing in the record demonstrates notice to the Defendants or the merits of his claims, his claims for medical malpractice and negligence against Raleigh General Hospital, MedExpress, Jan Care Ambulance

Service, Dr. Mohamad Kalou, Jessica Sharp, Kristina Kellen, and Jose S. Romero should be dismissed.

As to the Plaintiff's claim against the car owners, their insurers, and Dodge, the Court finds that the Plaintiff has failed to set forth a claim that is plausible on its face. Mr. Hardy has alleged no facts that state Christy and John Smith were operating their car in a negligent manner, or that it was defective in any way. He claims that the airbags did not deploy during the accident, but offers no factual support that this was the fault of the car owners or the car's manufacturer or that properly operating airbags would have deployed under the circumstances. Mr. Hardy fails to even allege any facts indicating the automobile was actually manufactured by Dodge. He merely makes the type of naked assertions that the *Twombly* court found are not sufficient to support a claim for which relief can be granted. Thus, the claims against John Smith, Christy Smith, Christy Smith's car insurance, and Dodge should be dismissed as being frivolous and without merit.

The Plaintiff also fails to state a valid claim against the Department of Health and Human Resources and the SSI and Disability offices in Beckley and Charleston. Mr. Hardy alleges some type of "conspiracy" in his complaint and amended complaint, but fails to specifically explain how these agencies and offices conspired against him to deprive him of anything. The Plaintiff merely states that he was required to wait and follow procedure in order to receive certain state and federal benefits, and his objections to the Magistrate Judge's PF&R fail to provide any greater factual detail to support his claims. Like the claims against the Smiths, their insurer and Dodge, the claims against the Department of Health and Human Resources, the SSI and Disability offices, the City of Beckley, the State of West Virginia, Mrs. Moore, and Mr. Moss should be dismissed as frivolous inasmuch as they lack any arguable basis in law or fact.

The Plaintiff's claims of discrimination and harassment against the Raleigh County Sheriff's Department and the individual law enforcement officers who arrived at the scene of the accident likewise should be dismissed. Judge Aboulhosn relied on the *Younger* abstention doctrine in making his finding and reasoned that the Court should abstain from exercising jurisdiction over these claims because the Plaintiff's complaint does not make it clear whether any state judicial proceedings were filed after the automobile accident. However, the Court finds that it need not reach the question of *Younger* abstention, because the Plaintiff has failed to state a plausible claim for discrimination. The Plaintiff states in his complaint that the law enforcement officers detained him on the ground while they searched the wrecked automobile for drugs and when officers ascertained that the found drugs were not his, they drove him home. The Plaintiff alleges that the officers discriminated against him by asking him if he knew other black people who had been at the scene of the accident before the police arrived. The Court finds that these assertions do not support a plausible claim for discrimination, particularly when law enforcement officers pressed no charges against the Plaintiff. The Plaintiff's objections with respect to these claims should be overruled.

The Court has reviewed the Plaintiff's claims against attorney J. Mingo Winters. Neither the Plaintiff's complaint, amended complaint, nor objections, set forth any factual allegations whatsoever that state a plausible claim for relief against Mr. Winters. The Plaintiff makes no factual statements as to when Mr. Winters was hired, why he was fired, or what he has done that constitutes grounds for legal relief. Therefore, the Plaintiff's claims against him should be dismissed as frivolous.

Finally, the Court has reviewed the applicable law regarding recusal. 28 U.S.C. §455(a) The Court finds no facts have been pled by the Defendant which would cause an objective observer to reasonably question the Court's impartiality in this matter. Thus, the objection to this Court reviewing the objections should be overruled.

**CONCLUSION**

WHEREFORE, after thorough review and careful consideration, the Court **ORDERS** that the Plaintiff's objections (Document 6) be **OVERRULED**, that the Magistrate Judge's *Proposed Findings and Recommendation* (Document 5) be **ADOPTED**, and that the Plaintiff's *Application to Proceed in Forma Pauperis* (Document 1) be **DENIED**. The Court further **ORDERS** that this matter be **DISMISSED** and **STRICKEN** from the Court's docket.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: May 4, 2018

*Irene C. Berger*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA